IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| DAVID BROWN, and NICOLE BROWN, | ) ) |
| Defendants. | ) ) |

Civil Action No. 2:04-cv-745

Judge Thomas M. Hardiman

## OPINION

Plaintiff Nationwide Mutual Insurance Company (Nationwide) brought this diversity action against Defendants David and Nicole Brown (collectively, the Browns), seeking a declaratory judgment that it has no obligation to provide uninsured motorist benefits to the Browns, and no obligation to provide underinsured motorist benefits to Nicole Brown. Defendants filed a three count counterclaim alleging breach of contract, statutory bad faith, and wrongful denial of benefits. Now pending before the Court are Nationwide's motion for judgment on the pleadings and motion to dismiss two counts of Defendants' counterclaim.

### I.   Factual and Procedural Background

On December 21, 2001, Defendant David Brown was operating his Harley-Davidson motorcycle with his wife Nicole as passenger. The Browns suffered serious injuries when a black BMW forced their motorcycle across the median and into another vehicle that was waiting to make a left turn. The driver of the BMW fled the scene and has not been identified. At the time of the accident, the Defendants owned three vehicles: the Harley-Davidson, a 1999 Jeep Wrangler, and a 1998 Ford F150. Each vehicle was insured by Nationwide under a separate

policy, with each providing coverage for uninsured (UM) and underinsured (UIM) motorist benefits of up to $100,000 per person and $150,000 per occurrence. Shortly after the Browns were released from the hospital, a Nationwide claims representative interviewed them at home. The Browns allege that the Nationwide claims representative stated that they could not recover UM or UIM benefits and offered Nicole Brown $17,500 in satisfaction of her claims under the liability provision of the policy covering the Harley-Davidson. Although it ultimately paid $100,000 to Nicole Brown pursuant to the liability provision of that policy, Nationwide investigated the accident and concluded that David Brown was solely responsible. Accordingly, Nationwide maintained that David could not recover for UM or UIM benefits under any of the policies. The Browns then demanded arbitration, alleging that the unidentified driver of the BMW caused the accident, and they sought to recover UM benefits under all three Nationwide policies. Nationwide responded by filing the instant action.

**II.    Legal Standard**

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well pleaded allegations as true and views them in the light most favorable to the plaintiff. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Claims should be dismissed under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, a court will not accept unwarranted inferences or sweeping legal

conclusions cast in the form of factual allegations. *Mitchell v. Cellone*, No. 01-2028, 2003 U.S. Dist. LEXIS 22347, at * 6 (W.D. Pa. November 17, 2003) (citing *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n.2 (1977)).

A motion for judgment on the pleadings pursuant to Rule 12(c) is analyzed using the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Regalbuto v. City of Philadelphia*, 937 F. Supp. 374, 376-77 (E.D. Pa. 1995). In deciding a Rule 12(c) motion, the district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993). Judgment will be granted only "if it is clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law." *Institute for Scientific Information, Inc. v. Gordon and Breach, Science Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) (citing *Jablonski v. Pan American World Airways*, 863 F.2d 289, 290-91 (3d Cir. 1988)).

### III.  Discussion

#### A.  *Judgment on the Pleadings: Household Exclusion*

Nationwide's motion for judgment on the pleadings seeks a declaration that it has no obligation to provide UM coverage to the Browns under the Jeep and Ford policies. Nationwide argues that the "household exclusion" included in all three policies limits the Browns to

recovering only under the Harley-Davidson policy.[1] The household exclusion reads: "[t]his coverage [uninsured motorist benefits] does not apply to . . . [b]odily injury suffered while occupying or struck by a motor vehicle owned by you or a relative, but not insured for auto liability coverage under this or any other policy." In tacit recognition that the household exclusion is fatal to their claim, the Browns argue that it is unenforceable.

The Pennsylvania Supreme Court addressed the validity of the household exclusion in *Prudential Property and Cas. Ins. Co. v. Colbert*, 813 A.2d 747 (Pa. 2002). There, Adam Colbert was injured in an automobile accident while driving his vehicle, which was insured by State Farm Insurance Company for both UM and UIM coverage. *Id.* at 749. At the time of the accident, Adam lived with his parents, who insured three vehicles with Prudential Property and Casualty Insurance Company. *Id.* Adam settled with the negligent driver and recovered the maximum amount of UIM benefits under his State Farm policy. *Id.* He then sought to recover UIM benefits from his parents' Prudential policy, which stated: "[w]e will not pay for bodily injury to anyone occupying or struck by a motor vehicle owned or leased by you or a household resident which is not covered under this policy." *Id.*

The Pennsylvania Supreme Court upheld the household exclusion in the Prudential policy, holding that it did not violate Pennsylvania's Motor Vehicle and Financial Responsibility Law (MVFRL). *Id.* at 754. The court reasoned that the insured was demanding that Prudential underwrite risks of which it was unaware and for which it had not been compensated. *Id.* To hold otherwise would grant the insured "gratis coverage on a vehicle that the insurer never knew

---

[1] Alternatively, Nationwide argues that the Browns executed valid stacking waivers on each of the three policies. Because the Court finds the household exclusion enforceable, it does not reach Nationwide's alternative argument.

4

existed." *Id.* Such a result would undermine the animating purpose of the MVFRL, *viz.*, a "legislative concern for the increasing cost of insurance." *Id.* at 753. The court wrote that voiding the household exclusion:

> would empower insureds to collect UIM benefits multiplied by the number of insurance policies on which they could qualify as an insured, even though they only paid for UIM coverage on one policy. As a result, insureds would receive benefits far in excess of the amount of coverage for which they paid, as would be the case here were we to void the exclusion. The same would be true even if the insureds never disclose any of the other household vehicles to the insurers. Consequently, insurers would be forced to increase the cost of insurance, which is precisely what the public policy behind the MVFRL strives to prevent.

*Id.* at 754.

Although *Colbert* did not determine whether the insurer's knowledge of the existence of other vehicles in the household would alter its analysis, the Court of Appeals for the Third Circuit has held that it would not. In *Nationwide Mutual Ins. Co. v. Riley*, 352 F.3d 804 (3d Cir. 2003), the insured was involved in an accident and recovered under the tortfeasor's liability policy. *Id.* at 805. After she also recovered the policy limit in UIM benefits from her own insurer, Nationwide, she attempted to recover UM benefits under the policy covering her father's vehicle, which was also insured by Nationwide. Nationwide denied the claim, relying on a household exclusion almost identical to the one at issue in the case at bar. *Id.* at 806. The Third Circuit acknowledged that the facts in *Riley* differed from *Colbert* because the same insurer had issued both policies and was presumably aware of both vehicles. *Id.* at 810. Nevertheless, the Court found this distinction immaterial, as the MVFRL's goal of limiting the increasing cost of insurance would still be frustrated if insurers were forced to "pay for items not factored into the

risk calculations." *Id.* In calculating the premium for the father's insurance policy, Nationwide had almost certainly not factored in the risk that his daughter would have an accident with an uninsured motorist while driving her own vehicle. *Id.* To require Nationwide to cover injuries arising from risks it did not consider and for which the insurer had not paid a premium would force Nationwide to increase the costs of its insurance, "precisely what the public policy behind the MVFRL strives to prevent." *Id.*

The *Colbert* and *Riley* cases preclude the Browns from recovering UM benefits from the Jeep and Ford policies. While it is true that Nationwide was aware of all three vehicles – Defendants note that they were given a multi-car discount when they purchased the policies – there is no indication that the premium charged by Nationwide under the Ford and Jeep policies reflected the risks that the Browns would be involved in an accident while riding the Harley-Davidson, or that they paid such a premium. Indeed, the fact that an endorsement to the policy specifically excluded all other vehicles in the household, including the Harley-Davidson, demonstrates beyond peradventure that Nationwide was aware of the risk from other household vehicles and excluded that risk when calculating the premium. To now allow the Browns to recover UM benefits for the Harley-Davidson accident, a risk that Nationwide excluded and for which the Browns did not pay a premium, "would confer benefits far in excess of the amount of coverage for which they paid." *Colbert*, 813 A.2d at 754.

In an attempt to avoid the consequences of the household exclusion, the Browns argue that there is no undisputed fact that Nationwide did not charge a premium under the Jeep and Ford policies for the risk of an accident with the Harley-Davidson. However, none of the pleadings or documents of record suggest such a premium was charged, and the household

exclusion itself indicates that the risk associated with the Harley-Davidson or any other household vehicles was excluded from the premium paid on each policy. Finally, the Browns note that *Colbert* involved UIM benefits, whereas UM benefits are at issue here. But they provide no persuasive reasons why this distinction would alter the *Colbert* analysis, and this Court finds none. Furthermore, the Court of Appeals for the Third Circuit has applied *Colbert* and *Riley* in the context of UM benefits. *See Nationwide Mutual Fire Ins. Co. v. Quinn*, 2005 U.S. App. LEXIS 10501 (3d Cir. June 7, 2005). Therefore, Nationwide's motion for judgment on the pleadings will be granted.

B. *Judgment on the Pleadings: Set-Off Clause*

Nationwide also seeks a declaration that Nicole Brown is not entitled to UM benefits under the Harley-Davidson policy pursuant to a set-off clause permitting Nationwide to reduce those benefits by any amount paid under the liability coverage. The set-off clause reads: "[d]amages payable under this coverage shall be reduced by any amount paid by or for any liable parties." Because Nationwide has already paid Nicole Brown $100,000 on behalf of David Brown, the set-off clause, if enforceable, would result in no additional payment.

The Superior Court of Pennsylvania has addressed the validity of set-off clauses in almost precisely the same situation faced here. In *Pempkowski v. State Farm Mut. Automobile Ins. Co.*, 678 A.2d 398 (Pa. Super. 1996), the plaintiff was injured in a two-car accident while riding as a passenger in a vehicle driven by her husband. *Id.* at 399. The husband was insured under a policy providing for $25,000 per person in liability coverage and $15,000 per person in UM coverage. *Id.* Plaintiff filed a negligence claim against her husband and the insurance company tendered $25,000 pursuant to the liability provision of the policy. *Id.* She then sought to recover

UM benefits under the husband's policy, claiming that a "phantom" motorist shared liability for the accident. *Id.* The insurance company denied the claim, citing a set-off clause providing that "any amount payable under the uninsured motorist coverage is to be reduced by the amount paid to an insured." *Id.* at 400. The trial court held that the set-off clause was invalid, and the insurance company appealed. *Id.* at 399. On appeal, the Superior Court framed the issue as "whether the set-off provision is enforceable where plaintiff is a 'class-one'[2] insured and her uninsured motorist claim is for liability of the second 'phantom vehicle.'" *Id.*

The Superior Court first held that the set-off provision was clear and unambiguous. *Id.* at 401. It then turned to the question of whether the provision violated the MVFRL, which requires insurers to offer UM coverage. *Id.* The court noted prior caselaw holding that the MVFRL does not contain "a provision which either directly or by implication precludes an insurer from reducing uninsured motorist benefits by the amounts recovered under the liability portion of the same policy." *Id.* at 402 (internal citations omitted). It also reviewed cases in which courts had upheld similar set-off provisions as applied to those who were not class-one insureds. *Id.* at 401-403 (discussing *State Farm Mutual Insurance Co. v. Broughton*, 621 A.2d 654 (Pa. Super. 1993) (en banc), and *Jeffrey v. Erie Insurance Exchange*, 621 A.2d 635 (Pa. Super. 1993) (en banc)). The Superior Court then rejected plaintiff's contention that her status as a class-one insured distinguished prior caselaw. *Id.* at 402-03. The court emphasized that the only reason the set-off clause denied plaintiff UM benefits was because she elected to purchase less UM coverage than

---

[2] Class-one insureds are: (1) the named insured, (2) any designated insureds, and (3) spouses and relatives of either, while they are residents of the same household. *Jeffrey v. Erie Insurance Exchange*, 621 A.2d 635, 644 (1993) (en banc).

liability protection. *Id.* at 403. Furthermore, since the insured could have elected to purchase stacked UM coverage, the insurance company had offered sufficient UM coverage and the set-off clause did not "result in the denial of all uninsured motorist benefits." *Id.* at n.4. Accordingly, the Superior Court held that the set-off provision was enforceable. *Id.* at 403.

The facts here are nearly identical to those in *Pempkowski*. Nicole Brown is a class-one insured. Having recovered on the liability provision of the Harley-Davidson policy, she now seeks to recover UM benefits under the same policy for the negligence of a "phantom vehicle." Like the plaintiff in *Pempkowski*, she had the opportunity to purchase stacked UM coverage but did not do so. In fact, she explicitly rejected stacked coverage and received a reduction in premiums for doing so. The only factual distinction offered by the Defendants, that Nicole Brown was a named insured and actually paid for the coverage herself, actually bolsters the analysis in *Pempkowski*. Whereas the plaintiff in *Pempkowski* was bound by the decision of her husband not to purchase stacked UM coverage or coverage in excess of the liability limit, here Nicole Brown herself made the decision to waive stacked UM coverage.

Defendants also rely upon *Allwein v. Donegal Mutual Ins. Co.*, 671 A.2d 744 (Pa. Super. 1996), which invalidated a similar set-off as applied to UIM benefits because it violated the "gap insurance" provisions of the MVFRL. Defendants submit that the *Pempkowski* court did not consider the gap insurance provisions of the MVFRL. However, *Allwein* deals with UIM benefits and the Defendants have provided only conclusory analysis as to why *Allwein* is applicable in the UM context. Furthermore, the fact that the Superior Court has affirmed an almost identical set-off clause in a case factually indistinguishable from the instant case, and did so less than four months *after* the *Allwein* case, renders Defendants' argument unpersuasive.

Accordingly, Plaintiff's motion on the pleadings with regard to Nicole Brown's claim for UM benefits will be granted.

C.    *Plaintiff's Motion to Dismiss the Counterclaim*

Nationwide has filed a motion to dismiss Counts II and III of Defendants' counterclaim, in which they claim that Nationwide acted in bad faith by: (1) misrepresenting the coverage terms when it sold the policies; (2) failing to adequately investigate the accident; and (3) denying coverage based upon the household exclusion, the stacking waivers, and set-off clauses when it knew these provisions were invalid under Pennsylvania law. The Browns also allege that Nationwide's misrepresentations in selling the policies violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa. C.S.A. §201 *et seq.* Nationwide counters that it reasonably relied upon these policy provisions and there is no cause of action under the UTPCPL for an insurer's refusal to pay a claim.[3] In supplemental briefing, Nationwide has asserted that the Pennsylvania insurance bad faith statute does not provide a cause of action against insurers for alleged improper underwriting practices.

The Court's ruling regarding the household exclusion and the set-off clause disposes of the Brown's claim that Nationwide acted in bad faith when it relied upon those provisions. Nationwide is also correct that its underwriting policies are not cognizable under Pennsylvania's insurance bad faith statute, 42 Pa. C.S. §8371. In *Brickman Group, Ltd. v. CGU Insurance Co.*, 865 A.2d 918 (Pa. Super. 2004), the Superior Court rejected plaintiff's argument that it was bad

---

[3] Nationwide also asserts that the Browns have alleged a cause of action under the Unfair Insurance Practices Act (UIPA), which they submit does not provide a cause of action. The Browns respond that they do not intend to assert a cause of action under the UIPA, but may rely upon alleged violations of the UIPA in proving their statutory bad faith claim. Nationwide does not challenge this assertion.

10

faith for the insurer to fail to renew coverage under an agreement to sell the same program of insurance for a six-year period. *Id.* at 930. The court emphasized that no case had held that "§8371 extends that section's protection to conduct *preceding the execution of insurance coverage.*" *Id.* (emphasis added). Likewise, in *Wise v. American General Life Insurance Co.*, 2005 U.S. Dist. LEXIS 4540 (E.D. Pa. 2005), the plaintiff filed a statutory bad faith claim based upon on an alleged scheme to collect annual insurance premiums, while providing less than a full year of actual coverage. *Id.* at *16. Reviewing Pennsylvania caselaw on the issue, the court found that the language of the statute and evidence of legislative intent "makes clear that the statute was intended specifically to cover the actions of insurance companies in the denial of benefits under an existing contract; there is no indication that it was intended to extend to an insurer's actions in the solicitation of customers or to regulate the insurance industry more generally." *Id.* at *17. The Court is persuaded by these cases that the Browns may not proceed under the bad faith statute for alleged misrepresentations in selling the policies. *See also Zimmerman v. Harleysville*, 860 A.2d 167 (Pa. Super. 2004); *Toy v. Metro Life Insurance Co.*, 863 A.2d 1 (Pa. Super. 2004).

    This holding, however, does not result in a full dismissal of Counts II and III. First, the Browns may prosecute their cause of action under the UTPCPL for misrepresentations regarding benefits when selling and underwriting an insurance policy. *Pekular v. Eich*, 513 A.2d 427 (Pa. Super. 1986). Additionally, they have claimed that Nationwide failed to promptly and properly investigate the cause of the accident and made a unilateral and unreasonable determination that David Brown was solely responsible for the accident. The Pennsylvania bad faith statute extends to an insurer's investigative practices. *O'Donnell v. Allstate Insurance Co.*, 734 A.2d 901 (Pa.

11

Super. 1999). Accordingly, only those portions of Defendants' counterclaim alleging statutory bad faith because of pre-contractual conduct and reliance upon the household exclusion and set-off clause will be dismissed.

## IV.   Conclusion

The Browns are precluded by a valid household exclusion from recovering uninsured motorist benefits under the Jeep and Ford policies. Additionally, the set-off clause in the Harley-Davidson policy, together with her recovery of the policy limit under the liability coverage, prohibits Nicole Brown from recovering any uninsured motorist benefits. Finally, the Browns may not proceed against Nationwide under the insurance bad faith statute for pre-contractual conduct or for reliance upon the household exclusion and set-off clause, but may pursue their counterclaim in all other respects.

An appropriate order follows.

_____
Thomas M. Hardiman
United States District Judge

cc: counsel of record

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) Civil Action No. 04-745 |
| v. | )<br>) |
| DAVID BROWN, and NICOLE BROWN, | ) Judge Thomas M. Hardiman<br>) |
| Defendants. | ) |

**ORDER OF COURT**

AND NOW, this 7th day of September, 2005, upon consideration of the briefs and arguments of the parties in support of and in opposition to Plaintiff's Motions to Dismiss the Counterclaim and Motion for Judgment on the Pleadings, it is hereby

ORDERED that, consistent with the foregoing Opinion, the Motions to Dismiss (Doc. Nos. 21 and 23) are GRANTED in part and DENIED in part; it is further

ORDERED that the Motion for Judgment on the Pleadings (Doc. No. 32) is GRANTED.

_____
Thomas M. Hardiman
United States District Judge

cc: counsel of record as listed below

Krista M. Kochosky
Dickie, McCamey & Chilcote
Two PPG Place
Suite 400
Pittsburgh, PA 15222-5402

Peter Skeel, Esq.
2400 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

Bernard C. Caputo, Esq.
Fort Pitt Commons Building
445 Fort Pitt Boulevard - Suite 260
Pittsburgh, PA 15219

Sean J. Carmody, Esq.
Patberg Carmody Ging & Filipi
527 Court Place
Pittsburgh, PA 15219